**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jet Aviation Flight Services Incorporated,<br><br>  Plaintiff,<br><br>v.<br><br>7BD LLC, et al.,<br><br>  Defendants. | No. CV-23-00059-PHX-DJH<br><br>**ORDER** |

On May 1, 2025, the Court consolidated this matter (hereafter "Case I") with *7BD LLC et al v. Jet Aviation Flight Services Incorporated*, 2:24-cv-02645-DJH ("Case II"). (Doc. 48). Prior to consolidation, Jet Aviation Flight Services Incorporated ("Jet Aviation") filed a Motion to Dismiss and to Compel Arbitration of the claims raised by 7BD in Case II. (Case II, Doc. 24). The matter is fully briefed. (Case II, Docs. 32–33). The Court will grant Jet Aviation's request to compel arbitration between the parties.

**I.    Procedural Background**

Case I was initiated on January 1, 2023, when Jet Aviation sued 7BD LLC, DePonte Investments Incorporated (collectively, "7BD"), and two additional parties, 7 Bravo Delta LLLP and Brent DePonte ("Mr. Deponte"), for breach of contract. (Doc. 1 at ¶¶ 29–35). On August 4, 2023, the Court granted the parties' request to stay the matter while they arbitrated their claims. (Doc. 24). Having been informed that the arbitration is complete, that stay has since been lifted. (Doc. 43).

While the parties were engaged in arbitration proceedings with Judicial Arbitration

and Mediation Services, Inc. ("JAMS") for the claims in Case I, 7BD states that it learned Jet Aviation made misrepresentations to Mr. DePonte. Instead of raising the claims with the arbiter, 7BD brought a state court action for accounting and fraud against Jet Aviation. (Case II, Doc. 32 at 4; Doc. 20 at ¶¶ 32–62). Notwithstanding the fraud claims, 7BD does not seek damages, but only "an accounting of the flight revenue, including expenses incurred, generated in association with the Aircraft, which [Jet Aviation] has refused to provide, despite demands from [7BD] that it do so." (Case II, Doc. 20 at ¶ 31).

## II.     Factual Background[1]

7BD is the former owner of two aircraft, a Dassault Aviation Model Falcon 2000 Classic aircraft (N797BD) (the "Falcon 2000") and a Dassault Falcon 900EX aircraft (N7BD) (the "Falcon 900"). (Case II, Doc. 20 at ¶ 10). Before purchasing the Falcon 900, 7BD sought out an aviation company to manage, maintain, operate and charter the Falcon 2000. (*Id*. at ¶ 14). Mr. DePonte, the principal of 7BD, met with Mr. Mark Nardi-Dei ("Mr. Nardi-Dei"), the Sales Director of Jet Aviation, to discuss Jet Aviation chartering their aircraft. Mr. Nardi-Dei represented to DePonte that Jet Aviation would be able to significantly reduce his ownership costs and that a Falcon 900EX would be highly sought out in the charter market. (*Id*. at ¶ 17). Jet Aviation allegedly furnished Mr. DePonte with a "Partnership Overview" which 7BD alleges was misleading. (*Id*. at ¶¶ 19–20).

7BD states that the Overview included "a Charter Analysis, which breaks down the expected charter retail rate per hour, the expected buyback to owner at 85% of retail rate that the aircraft was actually charted at, the expected fuel surcharge, sales tax rebate and 'expected owner revenue per hour.' " (*Id*. at ¶ 23). 7BD alleges that the Overview did not state that these figures were an approximation or estimate. (*Id*. at ¶ 24). 7BD states that, due to these misrepresentations, they entered into a contract with Jet Aviation to charter the Falcon 2000 and 900 aircrafts. (*Id*. at ¶¶ 25–27). The parties also executed dry leases for the aircraft, which entitled 7BD to 85% and 90% of all flight revenues as well as

---

[1] Unless otherwise indicated, these facts are taken from 7BD's First Amended Complaint (Case II, Doc. 20). When evaluating a motion to dismiss, the court "accept[s] as true the well-pleaded factual allegations in the complaint." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 962 (9th Cir. 2016) (citation omitted).

monthly accounting of all charter services, expenses, and all other amounts due to and from the parties. (*Id.* at ¶ 28). The parties agreed to arbitrate the claims related to these agreements in Case I. (Doc. 24).

### III. Legal Standard

#### A. Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). The plaintiff must show that the court in question has jurisdiction to hear their case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff bears the burden of "proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A court must dismiss a plaintiff's complaint if it fails to establish subject matter jurisdiction. *Savage*, 343 F.3d at 1039 n.2.

#### B. Failure to State a Claim

A motion to dismiss for failure to state a claim under Rule 12(b)(6) requires the Court to evaluate the legal sufficiency of a plaintiff's claims. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). This test requires that the plaintiff present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). These facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" with "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that provides "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id*. at 557. The Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. If the court dismisses a claim for failure to state a claim, it must then determine whether to grant leave to amend. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

### C.   Arbitration

The Federal Arbitration Act ("FAA") allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. If a party has failed to comply with a valid arbitration agreement, the district court must compel arbitration. *Id.* The district court must also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate. *Id.* at § 3; *see also Smith v. Spizzirri,* 601 U.S. 472, 472 (2024) (holding that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding" rather than dismissing the suit).

Arbitration agreements governed by the FAA are presumed to be valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226–27 (1987). The FAA's saving clause, however, "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citation omitted). Thus, "[i]n determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also* A.R.S. § 12–3006(A) ("An

agreement . . . to arbitrat[e] any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable and irrevocable except on a ground that exists at law or in equity for the revocation of a contract."). The party opposed to arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

## IV. Discussion

Jet Aviation seeks to dismiss 7BD's First Amended Complaint ("FAC") and to compel arbitration on 7BD's claims. (Case II, Doc. 24). Jet Aviation specifically argues that (1) 7BD's fraud claims are subject to arbitration, (2) the fraud claims were impermissibly split from the contract claims, (3) 7BD abandoned its right to bring the fraud claims, (4) the fraud claims are barred by the applicable statute of limitations and (5) "accounting" is not an independent cause of action. (*Id.* at 8–17). Jet Aviation also avers that it is entitled to fees if its Motion is successful. (*Id.* at 17–18).

7BD responds that (1) Jet Aviation's Motion improperly relies on extrinsic evidence, (2) the Court should decide the arbitrability of 7BD's fraud claims, (3) the Action is not subject to arbitration because of an express carve out for equitable relief, (4) its "Accounting" claim is a proper claim for relief, (5) the claim splitting doctrine does not apply, (6) it did not waive its ability to raise its claims and (7) its claims are not barred by the statute of limitations. (Case II, Doc. 32 at 8–16). It also avers that attorney's fees are improper. (*Id.* at 17). Jet Aviation retorts that the parties modified their arbitration agreement to include "any and all" disputes (Case II, Doc. 33 at 4), but does not further support its statute of limitations argument.

### A. Extrinsic Evidence

7BD argues that the Court is limited to the four corners of the pleadings here because this is a motion to dismiss and not a motion to compel arbitration. (Case II, Doc. 32 at 8).

On a motion to compel arbitration, "the Court may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 932 (S.D. Cal. 2022) (quoting *Macias v. Excel Bldg.*

- 5 -

Case 2:23-cv-00059-DJH   Document 58   Filed 08/20/25   Page 6 of 12

*Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011); *see also* Fed. R. Civ. P. 56(c). Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Federal Rule of Evidence 602 instructs that "[e]vidence to prove personal knowledge may consist of the witness's own testimony," and "may be inferred from a declarant's position." *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) (citations omitted). As 7BD acquiesces, "[i]n reviewing motions to compel arbitration . . . a court *must* 'consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits.' " *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 705 (9th Cir. 2024) (quoting *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (emphasis added)).

Jet Aviation's Motion is entitled "Jet Aviation's Motion To Dismiss [7BD's] First Amended Complaint And ***Compel [7BD] To Comply with Binding Arbitration Procedure***." (Case II, Doc. 24) (emphasis added). It specifically asks the Court to "compel [7BD] to comply with the JAMS binding arbitration procedure." (*Id*. at 1). Jet Aviation specifically argues that "[t]he FAA permits the Court to compel [7BD] to comply with JAMS arbitration procedures ***and*** to dismiss this matter." (Case II, Doc. 24 at 7–8 (citing the FAA, 9 U.S.C. § 4)) (emphasis added). 7BD somehow interprets this plain request as "entirely vague and unclear." (Case II, Doc. 32 at 2). It argues that "[Jet Aviation] deliberately and strategically chose to ask the Court to 'compel Plaintiffs to comply with the JAMS procedure,' being too cute in its attempt to prevent Plaintiffs from being able to prosecute their claims." (*Id*. at 9). This argument is circular and unmeritorious.

Jet Aviation obviously seeks to compel 7BD to arbitrate their fraud claims through JAMS instead of litigating them in this Court. They specifically state that Case II, what they describe as "the Tort Action," is "subject to binding arbitration." (Case II, Doc. 24 at 8). They support this request by arguing that "the plain language of the Agreements and the JAMS Rules ***allow the Arbitrator to hear 7BD's claims*** for fraud and their desired

equitable remedy." (*Id*. at 9). Jet Aviation is clearly not trying to "prevent [7BD] from being able to prosecute their claims," but seeks to defend against them through arbitration and not litigation—which the parties agreed to. (*See* Case II, Doc. 1-3 at 21; Doc. 1-5 at 1). Thus, because the Court "must" consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits" when reviewing motions to compel arbitration, the Court will consider the arbitration agreement between the parties. *Herrera*, 104 F.4th at 705.

### B.  Arbitrability

The parties next dispute whether the Court or the arbitrator should decide whether 7BD's claims are subject to arbitration. (*Compare* Case II, Doc. 24 at 10 *with* Doc. 32 at 9). Jet Aviation argues that "the parties clearly and unmistakenly delegated arbitrability to the Arbitrator through the incorporation of the JAMS Rules and the Court has no power to determine the arbitrability of this dispute." (Case II, Doc. 24 at 10). 7BD argues, on the other hand, that "the relevant arbitration provisions do not 'clearly and unmistakably' delegate that question to an arbitrator." (Case II, Doc. 32 at 9).  The Court finds that the JAMS arbitrator must decide the arbitrability of 7BD's claims.

#### 1.  Did the Parties Delegate Arbitrability?

"Federal substantive law governs the question of arbitrability." *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 719 (9th Cir. 1999). While there is a presumption that courts will decide which issues are arbitrable, "parties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co*., 862 F.3d 981, 985 (9th Cir. 2017) (quoting *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83-84 (2002)).

The Arbitration Agreement contained in the parties' Aircraft Service Agreement provides that:

> In the event of a dispute or controversy under or relating to this Agreement ***other than a dispute or controversy seeking injunctive or equitable relief***, it shall be submitted to arbitration for resolution, which arbitration shall be

>conducted in Arizona, before one arbitrator in accordance with the rules of JAMS alternative dispute resolution then in effect. The decision of the arbitrator shall be binding on the parties and judgment upon the award or arbitration rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitrator shall limit its judgment to the matters permitted to be submitted to it under the express terms of this Agreement. The expense of the arbitrator shall be borne equally between the parties hereto.

(Case II, Doc. 1-3 at 21) (emphasis added). Indeed, as 7BD notes, there is a carve out for injunctive or equitable relief in the Arbitration Agreement. (*Id.*) However, as Jet Aviation argues, the parties informed the Court in the contract matter that Jet Aviation and 7BD entered into a written agreement and "agreed to arbitrate ***any dispute or controversy arising out of the agreements*** within the State of Arizona utilizing JAMS alternative dispute resolution." (Case II, Doc. 1-5 at 1) (emphasis added). Similarly, DePonte Investments also agreed to "arbitrate ***any dispute or controversy arising out of the agreement*** within the State of New Jersey in AAA Arbitration." (*Id.* at 1–2) (emphasis added). Upon this information, the parties jointly moved, under the FAA, 9 U.S.C. §§ 3-4, for a stay of the action pending arbitration. (*Id.* at 1). Furthermore, the parties "stipulated and agreed" to "submit ***all*** disputes, claims or controversies to neutral, binding arbitration at JAMS, pursuant to the JAMS Arbitration Administrative Policies and, ***unless otherwise agreed in writing by the parties***, to the applicable JAMS Arbitration Rules and Procedures." (Case II, Doc. 1-6 at 2) (emphasis added). The Court will finally note that the Stipulation for Arbitration and Selection of Arbitrator states that "[t]he Parties hereby agree to give up any rights they might possess to have this matter litigated in a court or jury trial." (*Id.*)

The Court finds that the parties delegated arbitrability to the Arbitrator through their Stipulation. (Case II, Doc. 1-5). The Court finds in the next section that the Stipulation to Arbitrate is a binding contract between the parties. *See infra* Section III.B.2. "Where a contract contains an arbitration clause, courts apply a presumption in favor of arbitrability[.]" *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th Cir.

2012) (citation omitted). "That presumption applies with particular force where, as here, the arbitration clause is phrased in broad and general terms." *Id*. (citing *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 517 (9th Cir. 1991)).

The parties agreed to arbitrate in broad, general terms such as "any dispute." (Case II, Doc. 1-5 at 1–2). They stipulate that this would be the case "unless otherwise agreed in writing by the parties." (Case II, Doc. 1-6 at 2). The parties did not agree to litigate any dispute in this Court. Instead, they incorporated the JAMS arbitration rules into their arbitration agreement. (Case II, Docs. 1-5 & 1-6). "JAMS Rule 8(c) provides that ***an arbitrator*** shall decide the issue of ***arbitrability***." *Wynn Resorts, Ltd*., 497 F. App'x at 742 (emphasis added). Thus, the incorporation of the JAMS rules in the Stipulations (Case II, Docs. 1-5 & 1-6), as well as the use of broad, general terms is a clear and unmistakable agreement to delegate the adjudication of the gateway issue of arbitrability to the arbitrator. *See Wynn Resorts, Ltd*., 497 F. App'x 740, 742 (9th Cir. 2012) ("By incorporating the JAMS rules, the parties demonstrated their clear and unmistakable intent to have an arbitrator resolve the issue of arbitrability."); *see also ROI Props. Inc. v. Burford Cap. Ltd*., 2019 WL 1359254, at *4 (D. Ariz. Jan. 14, 2019) (finding that the incorporation of London Court of International Arbitration's rules in the Agreement's arbitration provision is "a clear and unmistakable agreement to delegate the adjudication of the gateway issue of arbitrability to the arbitrator.").

### 2. Did the Parties Stipulation Modify their Arbitration Agreement?

7BD also argues that there is no evidence the parties intended for the Stipulation to amend the Agreements because they can "only by a written instrument duly executed by an authorized representative of the parties hereto or their respective permitted assigns."[2]

---

[2] The Court notes that the written Stipulation was signed by Timothy I. McCulloch, 7BD's attorney. (Doc. 1-5 at 4). Mr. McCulloch also wrote 7BD's responsive motion. (Doc. 32 at 18). So, Plaintiffs essentially argue that their attorney is not an authorized representative that may modify their agreement to arbitrate. This argument is unavailing because, as 7BD's counsel of record, Mr. McCulloch is 7BD's agent and representative and may bind them through his actions. *See Rogone v. Correia*, 335 P.3d 1122, 1131 (Ariz. Ct. App. 2014) ("Attorneys serve as agents of their clients and bind them through actions they take within the scope of the representation."); *see also* Ariz. R. Prof'l Conduct 0.1 ("A lawyer, as a member of the legal profession, is a ***representative of clients***") (emphasis added).

1   (Case II, Doc. 32 at 10 (quoting Doc. 1-1 at 57, ¶ 16.8)).  It avers that the Stipulation did
2   not modify the Arbitration Agreement, but cite no case law or rule to support this assertion.
3   (*See id*.)  Jet Aviation, on the other hand, argues that "the parties specifically agreed to the
4   language in the stipulations, which was different from the Agreements, and are bound
5   accordingly." (Case II, Doc. 33 at 5 (citing *Christian Legal Soc. Chapter of the Univ. of*
6   *California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677–78 (2010) ("factual
7   stipulations are formal concessions that have the effect of withdrawing a fact from issue
8   and dispensing wholly with the need for proof of the fact. Thus, a judicial admission is
9   conclusive in the case.")).

10   An agreement to arbitrate is a matter of contract.  *Chiron Corp.*, 207 F.3d at 1130.
11   The parties entered into a Stipulation for binding arbitration and "agreed to arbitrate ***any***
12   dispute or controversy ***arising out of the agreements*** within the State of Arizona utilizing
13   JAMS alternative dispute resolution." (Case II, Doc. 1-5 at 1) (emphasis added). Similarly,
14   DePonte Investments also agreed to "arbitrate any dispute or controversy arising out of the
15   agreement within the State of New Jersey in AAA Arbitration." (*Id*. at 1–2). Interestingly,
16   7BD does not dispute that this Stipulation is binding.  (*See* Case II, Doc. 32).  Instead, it
17   argues that the Stipulation did not modify the Arbitration Agreement.

18   "The Court relies on basic contract principles to interpret [a] Stipulation. An
19   agreement to settle a legal dispute is a contract and familiar principles of contract law
20   govern its enforceability. Each party agrees to extinguish those legal rights it sought to
21   enforce through litigation in exchange for those rights secured by the contract." *Middleton*
22   *v. Halliburton Energy Servs., Inc*., 2023 WL 346668, at *3 (E.D. Cal. Jan. 20, 2023)
23   (quoting *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (internal quotation marks
24   omitted).  In Arizona, an enforceable contract requires "an offer, acceptance, consideration,
25   a sufficiently specific statement of the parties' obligations, and mutual assent." *Buckholtz*
26   *v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019) (citation omitted).  "[B]efore a
27   binding contract is formed, the parties must mutually consent to ***all*** material terms. A
28   distinct intent common to both parties must exist without doubt or difference, and until all

understand alike there can be no assent." *Id*. (citing *Hill-Shafer P'ship v. Chilson Family Tr.*, 799 P.2d 810, 814 (Ariz. 1990)). "Mutual assent is based on objective evidence, not on the hidden intent of the parties, and objective evidence includes both written and spoken words, as well as acts." *Id*. (citing *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 132 P.3d 825, 828 (Ariz. 2006)).

The parties' intention to modify this provision is apparent from the plain language of the Stipulation. The Stipulation constitutes a valid modification of the Agreement, requiring the parties to arbitrate "any" dispute or controversy "arising out of the agreements." (Case II, Doc. 1-5 at 1). The Stipulation further states that "Jet Aviation and [7BD] therefore agree that ***all issues*** between Jet Aviation and 7BD, LLC and DePonte Investments, Inc. in this action are referable to JAMS arbitration in Arizona pursuant to the parties' written agreements." (*Id*. at 2, ¶ 3) (emphasis added). The plain, unambiguous, language of the Stipulation shows that the parties intended to modify the Arbitration Agreement to require arbitration for "any" dispute or controversy "arising out of the agreements" as well as "all issues" in the contract action. (*See* Case II, Doc. 1-5). Thus, the Court finds that the Stipulation to Arbitrate (Case II, Doc. 1-5) is a binding contract between the parties which modified the original arbitration agreement. *See Sipple v. Allstate Ins. Co.*, 2006 WL 3825114, at *1 (D. Nev. Dec. 22, 2006) (finding that a "stipulation" to arbitrate was a binding contract between the parties).

**C.   Fees**

Jet Aviation finally argues that the Agreement "outlined that the prevailing party in any dispute arising out of the Agreements 'shall be entitled to recovery of reasonable attorneys' fees and expenses incurred in connection therewith.' " (Case II, Doc. 24 at 17 (citing Doc. 1-3 at p. 21, ¶ 16.6)). Jet Aviation is not "the prevailing party" because the Court has compelled arbitration between the parties based on their Stipulation. *See supra* Section III.B. 7BD could still prevail in the JAMS arbitration proceedings on its claims. So, Jet Aviation is not entitled to fees as there is no prevailing party here. *See Perry v. NorthCentral Univ., Inc.*, 2012 WL 1753014, at *1 (D. Ariz. May 16, 2012) ("an order

compelling arbitration, being merely a preliminary procedural order that is not on the merits and does not materially alter the legal relationship of the parties, does not make the litigant obtaining the order a prevailing party for purposes of a fee award.").

Accordingly,

**IT IS ORDERED** that Jet Aviation's Motion to Dismiss and Compel Arbitration (Doc. 24 in *7BD LLC et al v. Jet Aviation Flight Services Incorporated*, 2:24-cv-02645-DJH (D. Ariz. Nov. 25, 2024), is **denied in part and granted in part.**  Jet Aviation's Motion to Compel Arbitration of the claims in 7BD's First Amended Complaint (Case II, Doc. 20) is **granted** and the parties shall proceed to binding arbitration in Arizona utilizing JAMS alternative dispute resolution.

**IT IS FURTHER ORDERED** that this matter is stayed *only* as to the claims raised in 7BD's First Amended Complaint (Case II, Doc. 20).  Jet Aviation's request for attorneys' fees is **denied** without prejudice.

**IT IS FINALLY ORDERED** that the parties shall submit a status report on October 20, 2025, and every sixty (60) days thereafter and within five (5) days of a decision by the arbiter.

Dated this 19th day of August, 2025.

Honorable Diane J. Humetewa
United States District Judge