**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jet Aviation Flight Services Incorporated, | No. CV-23-00059-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| 7BD LLC, et al., | |
| Defendants. | |

On May 22, 2025, Jet Aviation Flight Services, Inc. ("Plaintiff" or "Jet Aviation") filed a Motion to Confirm Binding Arbitration Award (Doc. 49). On June 23, 2025, 7BD LLC ("7BD") and DePonte Investments ("DePonte") (collectively, "Defendants") filed a Motion to Vacate Arbitration Award (Doc. 54). Both Motions are fully briefed. (*See* Docs. 53, 56, 57).[1]

## I.      Background

This case generally arises out of contractual disputes between the parties. Despite originally filing suit with the Court, the claims in this case were eventually resolved through arbitration proceedings.

### A.      The Parties' Agreements

Throughout 2021, Plaintiff entered into five contracts (collectively, the "Agreements") with 7BD and/or DePonte. (*See* Docs. 49-2–49-6). These contracts include two Aircraft Services Agreements, executed in March 2021 ("March ASA") and in October

---

[1] Plaintiff's Reply to its Motion to Confirm acts simultaneously as a Response in Opposition to Defendants' Motion to Vacate. (*See* Doc. 56).

2021 ("October ASA"), as well as two corresponding "Dry Leases."  (*See* Docs. 49-2, 49-3, 49-5, 49-6).  In essence, these agreements memorialized the parties' intent for 7BD to pay Jet Aviation for its management, maintenance, and charter services for two aircrafts owned by 7BD: a Dassault Falcon 900EX and a Dassault Falcon 2000 Classic.  (*See generally id.*).  Deponte is listed as the "operator" on both the ASAs. (Doc. 49-2 at 2; Doc. 49-5 at 2).  DePonte and Jet Aviation, additionally, entered into the Flight Support Services Agreement ("FSSA") to provide support personnel for the Dassault Falcon 2000 Classic in conjunction with the March ASA.  (Doc. 49-4).

During the course of the Agreements, Plaintiff claimed that Defendants failed to pay it amounts owed under the Agreements.  (Doc. 21 at ¶¶ 29–34).  As a result of the alleged nonpayments, Plaintiff originally brought suit against Defendants in this Court on January 10, 2023.  (*See* Doc. 1).  Citing arbitration clauses in their Agreements, the parties subsequently filed a Joint Motion to Stay pending Arbitration (Doc. 22), which the Court granted on August 4, 2023.  (*See* Doc. 24).

**B.    Arbitration Proceedings**

The parties agreed to conduct binding arbitrations using Judicial Arbitration and Mediation Services ("JAMS") alternative dispute resolution, governed by the JAMS Rules. (Doc. 22 at 2).  On August 9, 2023, Plaintiff filed its First Amended Statement of Claims with JAMS, bringing a singular breach of contract claim.  (Doc. 49-10).  Defendants, in answering the First Amended Statement, brought affirmative defenses as well as counterclaims of breach of contract and the implied covenant of good faith and fair dealing against Jet Aviation.  (Doc. 49-11).  Later that same month, the parties stipulated that Daniel Platt, Esq. would serve as the Arbitrator throughout the JAMS proceedings.  (Doc. 49-7 at 2).

On November 2, 2023, the parties attended a preliminary hearing and received the original schedule for their arbitration.  (Doc. 49-12 at 2).  Initial disclosures were to be completed by November 30, 2023, the discovery cut-off would be thirty days prior to the evidentiary hearing, and motions to compel discovery had to be filed and served no later

than five days after the discovery cut-off. (*Id.* at 3–4). The evidentiary hearing was first set to begin on April 29, 2024. (*Id.* at 5).

However, the discovery process proved to be highly contentious, requiring the Arbitrator to settle multiple discovery disputes and extend the time needed for the parties to complete the necessary discovery. (*See* Doc. 49-13 at 2–3, 5–6, 8–10, 12, 14, 16–20, 22–23). Therefore, the original scheduling order was amended, and the evidentiary hearing was reset to begin on August 26, 2024. (Doc. 49-14). Following further discovery, including the deposition of two Jet Aviation witnesses, Defendants moved to continue the evidentiary hearing, which Plaintiff opposed. (Doc. 49-16 at 2). The Arbitrator granted the motion to continue and set a five-day evidentiary hearing to be conducted on September 9, 10, 17, 2024 and October 2 and 3, 2024. (*Id.*) An additional arbitration date was then added and scheduled for October 11, 2024. (*Id.* at 5).

On August 28, 2024, Defendants filed a "Motion for Appointment of Discovery Master, Motion to Compel and Continue Depositions, Motion to Continue Arbitration," which sought the "following relief: (1) the appointment of a Discovery Master at Claimant's expense; (2) additional time to depose the corporate designees on topics 1, 2, 3, 6, 7, 8, 11, 12, 14, 16, 17 and 18; (3) to continue the evidentiary hearing; and (4) additional time to bring a motion to compel." (Doc. 49-17 at 2–3). The Arbitrator held a telephonic hearing on the motion that same day and subsequently denied all of Defendants' requested relief. (*Id.* at 2–3). Despite the forthcoming evidentiary hearing on September 3, 2024, Defendants filed a complaint in Maricopa County Superior Court against Jet Aviation, bringing accounting and fraud claims related to the Agreements and parties' ongoing arbitration. (*See 7BD, LLC et al. v. Jet Aviation*, CV2024-024192 ("Case Two"). Plaintiff subsequently removed Case Two to this Court. (*See* Case No. 2:24-cv-02645).[2]

Notwithstanding Defendants' decision to file Case Two, the parties proceeded with arbitration on their initial claims, and a six-day evidentiary hearing was held before the

---

[2] Defendants' Case Two suit has muddied the waters here. After removal, Case Two was consolidated with the present case (Doc. 48). The claims in Case Two were then subsequently referred to arbitration. (*See* Doc. 58). The parties are still in the early stages of the arbitration proceedings on Defendants' Case Two claims. (*See* Doc. 65).

Arbitrator on September 9, 10, 17, and October 2, 3, and 11, 2024. (Doc. 55-17 at 4). In advance of the hearing, the parties submitted opening briefs to the Arbitrator, and in lieu of oral closing arguments, the parties filed closing briefs. (Docs. 49-18, 49-20). Throughout the hearing, both parties examined and cross-examined expert and lay witnesses, and they had the opportunity to present evidence and argument to the Arbitrator. (*See generally* Docs. 55-1–55-5) (hearing transcripts)). Ultimately, the Arbitrator found for Jet Aviation on all claims and awarded it damages against 7BD in the amount of $1,295,161.00 and against DePonte in the amount of $215,158.00. The Arbitrator also awarded Jet Aviation $736,169.73 in attorney fees, assessed jointly and severally against Defendants. (*See* Doc. 55-17 at 2–26). Following the Arbitrator's Final Award, the parties filed cross motions to either confirm or vacate the award, which are now before the Court. (Docs. 49, 54).

## II.    Legal Standard

Judicial review of an arbitration award is "limited and highly deferential." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (internal quotation omitted). The Federal Arbitration Act ("FAA") enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award. *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009). Courts may only vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

"Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard." *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 994 (9th Cir. 2003). The limited review authority under § 10(a) "is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." (*Id.* at 998). "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

## III.    Discussion

The Court will first address Defendants' Motion to Vacate to determine whether Defendants received a fundamentally fair hearing. The Court will then turn to the merits of Plaintiff's Motion to Confirm the Arbitration Award.

### A.    Defendants' Motion to Vacate

Defendants' arguments only concern § 10(a)(3), which again provides that vacatur of an award may be entered "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced[.]" 9 U.S.C. § 10(a)(3).

Defendants argue vacation of the Award is justified under § 10(a)(3) because the Arbitrator, (i) "refus[ed] to compel Plaintiff[] to produce additional discovery respecting the correct amount of charter revenue credits, (ii) refus[ed] to postpone the hearing to allow the discovery, and (iii) refus[ed] to permit certain of Defendants' inquiries into the subject at the hearing." (Doc. 54 at 5 (internal quotations omitted)). The Court will address each contention in turn.[3]

---

[3] At the outset, the Court reminds Defendants of the highly limited review role it has here. Defendants spend a significant portion of their briefing recounting why they believe documents in Plaintiff's billing packages were unreliable or contained errors. (*See*, *e.g.*, Doc. 54 at 8–13). Additionally, Defendants' Motion addresses the Arbitrator's consideration of hearsay evidence and the opinions given by Plaintiff's expert. (Doc. 54 at 16–17, 19). These issues are outside of the Court's review and, moreover, do not relate to the three areas raised above. *See Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128 (9th Cir. 2003) (When reviewing an arbitration award, "[the Court has] no authority to re-weigh the evidence."). In its limited § 10(a) review, it is not for the Court to consider the merits of the underlying claims or award.

### 1. Refusal to Compel Additional Discovery

Defendants contend that the Arbitrator committed misconduct in limiting discovery and excluding evidence. (Doc. 54 at 18–21). They further assert that the Arbitrator "[refused] to compel Plaintiff to produce additional discovery respecting the correct amount of charter revenue credits," rendering the proceedings fundamentally unfair. (*Id.* at 5). Defendants do not specify what discovery the Arbitrator refused them or which documents they were seeking, and, outside of mentioning a motion they filed requesting various forms of relief, Defendants do not detail the efforts that they brought before the Arbitrator to get any additional discovery.[4] Plaintiff says that it produced "thousands of documents" compared to Defendants' production and argues that its productions fully enabled Defendants to calculate charter income. (Doc. 56 at 2).

Arbitration does not "provide the same procedural protection as do judicial proceedings[,]" and "an arbitrator need only grant the parties a fundamentally fair hearing." *Sunshine Min. Co. v. United Steelworkers of Am., AFL-CIO, CLC*, 823 F.2d 1289, 1295 (9th Cir. 1987) (internal quotation marks and citation omitted). "A hearing is fundamentally fair if it meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Id.* (internal quotation marks and citation omitted).

Arbitrators enjoy "wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit," so long as they give "each of the parties to the dispute an 'adequate opportunity to present its evidence and arguments.' " *U.S. Life Ins.*, 591 F.3d at 1175 (quoting *Sunshine Mining Co.*, 823 F.2d at 1295). "The arbitrator is the judge of the admissibility and relevancy of evidence submitted in an arbitration proceeding." *Hoteles Condado Beach, La Concha and Conv. Ctr. v. Union De Tronquistas Loc. 901*, 763 F.2d 34, 39 (1st Cir. 1985). "[E]very failure of an arbitrator to receive

---

[4] Defendants also address a discovery dispute that the Arbitrator resolved by ordering "the parties to respond to each other's requests without limitation." (Doc. 54 at 12). According to Defendants, Plaintiffs thereafter made supplemental productions on May 6 and 17, 2024. (*Id.*) As this was not an unfavorable outcome to Defendants, the Court assumes that this discovery dispute is not implicated in Defendants' claim that the Arbitrator refused to compel further documents.

relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award." *Id.* at 40.  A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.  *Id.*

Defendants liken their circumstances to those of the plaintiff in *Lindsey v. Travelers Com. Ins. Co.*, 636 F. Supp. 3d 1181 (E.D. Cal. 2022).  In *Lindsey*, the plaintiff filed three motions to compel payroll data from defendant, evidence he said would support his claim that the defendant denied him promotions based on his race.  *Id.* at 1182, 1186.  The last motion to compel was filed while the defendant's motion for summary judgment was pending.  In this motion, the plaintiff explained that the data was relevant because a manager at the defendant company "had told him he was making about $30,000 to $40,000 less than white employees with similar or less experience." *Id.* at 1186.  Nonetheless, the arbitrator granted the defendant's motion for summary judgment, concluding that the plaintiff "had not cited evidence to show 'race was even a factor' in [the defendant's] pay and promotion decisions," then denied the discovery dispute as moot.  *Id.*  Upon review, the court found that "the arbitrator denied [the plaintiff] the very evidence he later faulted him for not producing," such that the proceedings were fundamentally unfair.  *Id.*

However, Defendants' discovery efforts and the already-available evidence here are not comparable to the circumstances in *Lindsey*.  Most critically, unlike *Lindsey*, Defendants did not file a motion to compel the production of any further or unredacted documents that they were seeking.  In their attempt to reopen the completed hearing, Defendants claimed that they had filed a motion to compel "documents that would show the amount of charter revenue actually received by Jet Aviation." But the Arbitrator pushed back against this portrayal, stating Defendants' "characterization of that motion is inaccurate because it did not seek the production of any documents."  (Doc. 55-17 at 16). Instead, the record reveals Defendants filed a motion requesting "the following relief: (1) the appointment of a Discovery Master at Claimant's expense; (2) additional time to depose the corporate designees on topics 1, 2, 3, 6, 7, 8, 11, 12, 14, 16, 17 and 18; (3) to continue

the evidentiary hearing; and (4) additional time to bring a motion to compel." (Doc. 49-17 at 2). The Arbitrator held a telephonic hearing on the motion, and the rulings on Defendants' requests are telling. In relevant part, the Arbitrator's order reads:

> Motion for Additional Time to Depose the Corporate Designees on Topics 1, 2, 3, 6, 7, 8, 11, 12, 14, 16, 17: The Motion does not contain any evidence as to those topics; the notice of deposition was not included as evidence in support of the request. Nor do Respondents articulate what each topic is so the Motion is therefore DENIED as to this request.
>
> Motion to Continue the Evidentiary Hearing: Respondents moved to continue the hearing on July 31, 2024. That motion was granted, and the evidentiary hearing was continued. Respondents now move again based on the argument that they need more time to conduct discovery. However, Respondents have made no showing as to why they waited months before beginning discovery, why a second continuance is necessary, or why 14 hours of testimony of a corporate witness is insufficient. The Motion is therefore DENIED as to this request.
>
> Motion for Additional Time to Bring a Motion to Compel: This request seeks the same relief as the instant motion, i.e., further answers to certain topics allegedly contained in the Notice of Deposition. It is therefore duplicative. Also, as set forth above, no showing has been made. The Motion is therefore DENIED as to this aspect of the relief sought.

(*Id.* at 3).

In sum, the Arbitrator denied Defendants requests because Defendants completely failed to provide any specifics or identify any particular documents that they were seeking. Crucially, Defendants do not guide the Court to where in the record it shows the Arbitrator deprived Defendants of any material evidence that they sought, or where in the record Defendants explained their need for the evidence during the discovery process. *C.f. Lindsey*, 636 F. Supp. 3d at 1186. Notably, in September of 2023, Plaintiff provided Defendants with "Monthly Billing Packages" ("MBPs"), which included "all contracts, invoices, and all substantiating documentation[.]" (Doc. 49-15 at 2). Plaintiff later produced additional "Charter Invoices" and "Charter Invoice Worksheets" to Defendants.[5]

---

[5] Defendants take issue with the redactions in these documents, but they do not submit any compelling argument about how Plaintiff's redactions amount to misconduct by the Arbitrator. Plaintiff redacting certain information in documents "does not describe any

Therefore, Defendants purportedly had extensive financial records relevant to Plaintiff's charter invoice revenue available to them during the arbitration. Moreover, they conducted fourteen hours of deposition with Plaintiff's corporate witness. (*See* Doc. 55-16 at 3; Doc. 49-17 at 3). As such, Defendant did not lack the *only* evidence available to calculate charter income.

In ruling on Defendants' request to reopen the hearing, the Arbitrator concluded that Defendants "did not file a motion to compel the production of any documents and has therefore not made a showing of good cause to reopen the hearing." (Doc. 55-17 at 16). The Arbitrator was also convinced that Defendants had all the necessary evidence to calculate the amount of charter revenue Plaintiff received because Defendants' expert stated as much. (Doc. 55-17 at 16–17). Defendants disagree with this characterization, noting that their expert pointed out that such a conclusion was only justified if one assumed that the charter revenue invoices were accurate. (Doc. 54 at 18). Defendants do not, however, specify what documents or information would have revealed any inaccuracies. Moreover, the Arbitrator was able to determine for himself whether he found the invoices to be accurate, then was able to credit the expert's statement as he saw fit.

Indeed, the Arbitrator noted that Plaintiff's expert testified as to the past due balance owed by Defendants and "[n]o evidence was offered to counter the analysis of [Plaintiff's expert]…[Defendant's] designated expert, confirmed those calculations, did not offer any of his own, acknowledged that the data necessary to form an opinion was produced and testified that 'I have not disputed invoices, and I have not disputed [Plaintiff's expert's] report.' " (Doc. 55-17 at 11). "Absent exceptional circumstances…a reviewing court may not overturn an arbitration award based on the arbitrator's determination of the relevancy or persuasiveness of the evidence submitted by the parties." *Hoteles Condado Beach*, 763

action by the arbitrator, let alone any *refusal* by the arbitrator to hear certain evidence." *Steinmann v. ZTE Corp.*, 2015 WL 13546434. *5 (C.D. Cal. 2015), *aff'd*, 692 Fed. Appx. 493 (9th Cir. 2017) (unpublished) (emphasis original). During the hearing, Defendants raised the issue of the redactions in Plaintiff's supplemental productions. The Arbitrator then stated that the redactions would be considered towards the weight he afforded the documents. (Doc. 55-1 at 71–72). Defendants, otherwise, do not show that they raised the redaction issue with the arbitrator or sought to compel unredacted documents such that the Court can review any decision for possible misconduct on the part of the Arbitrator.

F.2d at 39-40. And "the evidence need only be sufficient to enable the arbitrators to make an informed decision." *Nordahl Dev. Corp., Inc. v. Salomon Smith Barney*, 309 F. Supp. 2d 1257, 1265 (D. Or. 2004); *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 281 (7th Cir. 1992) (declining to vacate an arbitration award based on the arbitrator's exclusion of evidence concerning mitigation of damages); *see also McEnery v. McEnery*, 2025 WL 315414, *3-4 (N.D. Cal. 2025) (confirming an arbitration award where the arbitrator determined that valuation of the relevant LLCs submitted by plaintiff after the interim award did not warrant reconsidering the award).

While Defendants address Plaintiff's conduct during discovery at length, the parties' contentious relationship is not relevant to the considerations before the Court. Rather, the question is whether the Arbitrator committed misconduct by refusing to hear evidence pertinent and material to the controversy. The Court finds that Defendants have not shown that the Arbitrator refused to consider any such evidence, primarily because Defendants were not diligent in bringing efforts to compel any specific discovery they thought was essential. Although Defendants frame their arguments as discussions of the Arbitrator's conduct, they ultimately point to almost no affirmative action taken by the Arbitrator in regard to Defendants' discovery efforts. (*See* Arbitration Decision, Doc. 55-17 at 13 (noting that Defendants failed to address the merits of Plaintiff's claims or their own counterclaims in their closing arguments and instead merely "argued that due to discovery abuses by Jet Aviation, they were not provided with sufficient documentation to prove their case")); *Steinmann*, 2015 WL 13546434 at *6 ("Plaintiffs do not explain how the arbitrator's denial of '[Plaintiff's'] attempts to obtain any discovery regarding the amount of the earnings owed to him' prejudiced Plaintiffs where Plaintiffs' Opposition to Defendants' Motion for Final Determination explicitly references this argument."). Notably, Defendants' Motion does not include any significant discussion of their discovery efforts to acquire the documents they thought to be essential. (*See generally* Doc. 54).

At bottom, Defendant has not demonstrated a refusal by the Arbitrator to hear material evidence. Defendants do not articulate what specific additional evidence that they

sought, nor do they convincingly explain how it was critical to the outcome.  The Arbitrator correctly determined that he and Defendants had all the necessary information to correctly calculate the damages in these proceedings.

### 2.      Refusal to Postpone Evidentiary Hearing

Defendants also argue the award should be vacated because the Arbitrator improperly refused to postpone the evidentiary hearing. (*See* Doc. 54 at 15).

Arbitrators are "provided with broad discretion and great deference in their determinations of procedural adjournment requests." *Fordjour v. Washington Mut. Bank*, 2010 WL 2529093, at *5 (N.D. Cal. 2010).  "While the arbitrary denial of a reasonable request for a postponement may serve as a ground for vacating the arbitration award, if there exists a reasonable basis for the arbitrator's considered decision not to grant a postponement, no misconduct will be found." *Id.* (citation omitted).  Vacatur under section 10(a)(3) is only warranted if the denial of a postponement denied a party a fundamentally fair arbitration proceeding.  *Id.*

Here, the evidentiary hearing had already been postponed twice, and the Arbitrator denied Defendants' request to postpone it a third time.  (See Doc. 49-14, Doc. 49-16).  In so ruling, the Arbitrator explained that "[Defendants] have made no showing as to why they waited months before beginning discovery, why a second continuance is necessary, or why 14 hours of testimony of a corporate witness is insufficient."  (Doc. 49-17 at 3). Although the Arbitrator was not required to explain his decision, *see El Dorado Sch. Dist. No. 15 v. Contl. Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001); *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992), here he did: he provided that Defendants made an insufficient showing that further postponement was necessary given the time and efforts already expended on discovery.  Thus, the Arbitrator gave a reasonable basis for his decision not to postpone, and the denial of a postponement did not result in a fundamentally unfair hearing.  *See*, *e.g.*, *Milliner v. Bock*, 2020 WL 3103788, *4-5 (N.D. Cal. 2020) (upholding an unexplained denial of postponement where the respondents agreed to the already-set discovery deadlines and did not specify an actual discovery

dispute).

### 3.    Refusal to Permit Certain Questioning

Defendants' final contention under § 10(a)(3) is that the Arbitrator's refusal to permit certain of Defendants' inquiries during the hearing amounted to a refusal to hear evidence pertinent and material to the controversy. (Doc. 54 at 14–15). Defendants point to a sustained objection on the second day of the evidentiary hearing. (Doc. 55-2 at 209–10). When Defendants questioned Plaintiff's Vice President ("VP") about Jet Aviation's vendor agreement with "NetJets" Plaintiff argued that "bringing in collateral contractual agreements with third-parties" was "wholly inappropriate." (*Id.* at 210). The Arbitrator sustained Plaintiff's objection. Defendants now claim the Arbitrator's sustained objection prohibited Defendants from "discover[ing] the Aircraft's true charter revenue[.]" (Doc. 54 at 15).

Defendants do not explain how these third-party contracts prohibited them from establishing Plaintiff's "true" charter revenue, or how they were necessarily relevant to the calculation such that Arbitrator's refusal to hear this testimony in full undermined the fundamental fairness of the proceeding. Nor do they provide any authority that supports the contention that the Arbitrator's sustained objection to this questioning deprived Defendants of a fair hearing. The Court notes that this objection was only sustained after Defendants counsel was allowed to ask Plaintiff's VP multiple questions about NetJets and after Defendants were able to question following witnesses about NetJets. (*See* Doc. 55-2 at 204–208; *see*, *e.g.*, Doc. 56-4 at 96; Doc. 56-5 at 55 (listing references to "NetJets" during subsequent hearing days)). "[Defendants have] provided no argument or authority to show that [the Arbitrator's] rulings were erroneous or affected the fundamental fairness of the arbitration. Absent this case authority and argument, [Defendants'] argument is nothing more than an expression of disagreement with evidentiary rulings which does not support vacatur." *MPJ v. Aero Sky*, L.L.C., 673 F. Supp. 2d 475, 501 (W.D. Tex. 2009).

In sum, "[t]he standard for vacatur of an arbitration award is high, and [Defendants] have not met their burden to show they are entitled to such vacatur." *Goldan v. Toll*

- 12 -

*Brothers AZ Limited Partnership*, 2025 WL 1940011, *6 (D. Ariz. 2025).  Defendants were afforded an extensive discovery process and attended a six-day hearing where they had ample opportunity to present their case to the Arbitrator.  None of the Arbitrator's actions identified by Defendants constitute misconduct and certainly does not warrant vacating the final award.

### B.    Plaintiff's Motion to Confirm

Having determined that no circumstances in the underlying arbitration require vacatur under § 10(a)(3), the Court will address Plaintiff's Motion to Confirm.

A party to an arbitration may apply to a district court for an order confirming the arbitration award.  9 U.S.C. § 9.  A court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." *Id.*; *see Stafford v. Baart Behavioral Health Servs*., 855 F. App'x 426, 427 (9th Cir. 2021) (granting an arbitration award because there were no grounds for vacatur).

The Court concluded above that the Arbitrator did not commit misconduct under § 10(a)(3).  Plaintiff further submits, in its Motion, that the award was not procured by corruption, fraud, or undue means; the Arbitrator did not demonstrate evident partiality or corruption; and the Arbitrator did not exceed his authority.  (*See* Doc. 49 at 12–16); 9 U.S.C. § 10(a)(1–4).  The Court agrees that no basis for the vacatur or modification of the award has been demonstrated and finds that the parties received a fundamentally fair hearing before an impartial Arbitrator.  Therefore, confirmation of the award is required, and Plaintiff's Motion is granted.  *See* 9 U.S.C. § 9.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Vacate Arbitration Award (Doc. 54) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Confirm Binding Arbitration Award (Doc. 49) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Final Award dated March 31, 2025, in the matter executed by Arbitrator Daniel Platt, Esq., JAMS Arbitration Reference No.

5220003064 (Doc. 49-1), is **CONFIRMED** under 9 U.S.C. § 9.  The Clerk of the Court is kindly directed to enter judgment on the Award (Doc. 49-1) under 9 U.S.C. § 13.

**IT IS FINALLY ORDERED** that Plaintiff may file a motion for attorney fees, pursuant to the Agreements and A.R.S. § 12-341.01, within thirty (30) days of this Order.

Dated this 16th day of March, 2026.

Honorable Diane J. Humetewa
United States District Judge

- 14 -